UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:08-CV-495-H

THOMAS YODER                                                                              PLAINTIFF

V.

LOUISVILLE/JEFFERSON COUNTY METRO GOVERNMENT                     DEFENDANT
d/b/a LOUISVILLE METRO DEPARTMENT OF CORRECTIONS

**MEMORANDUM OPINION AND ORDER**

Plaintiff Thomas Yoder ("Yoder") brought suit against Defendant Jefferson County Metro Government d/b/a Louisville Metro Department of Corrections ("Department of Corrections" or "Department") alleging violation of The Uniformed Services Employment and Re-employment Act (USERRA), which prohibits employment discrimination against service men and women. The Defendant has moved for summary judgment and, for the reasons that follow, the Court will deny that motion.

I.

In May or June of 2006, the Department hired Yoder as a corrections officer. On July 21, 2006, he began employment with the typical nine month probationary period. At the time of his employment, Yoder was a member of the inactive Army reserves.

On January 6, 2007, Yoder and Officer William Albright, both probationary officers, were involved in an altercation with an inmate; Officers Adrian Hughes and Wilton Quesenberry and Sergeant Darrell Goodlett were also present for part of the incident. Yoder assisted the same inmate to file a grievance regarding the altercation. Lieutenant Arthur Eggers commenced an investigation of the incident on January 12, 2007. He completed the investigation and forwarded

his findings to Deputy Director Kevin Sidebottom on March 27, 2007 and to Director Tommy Campbell on March 29, 2007. Sidebottom and Campbell made the decision to terminate Yoder.

Sometime during his employment, Yoder joined the active reserves, prompted in part by a recruiter's visit to the workplace. In mid-March, 2007, Plaintiff allegedly "advised chain of command that he might be activated," and, in early or mid-April, the Plaintiff learned that he would be mobilized on May 15, 2007. Plaintiff first gave his employer an "informal advisory" and then verbally informed his direct supervisors, Lieutenant Williams and Captain Chapman, of his mobilization on April 17, 2007.[1]

On April 19, 2007, Plaintiff, like Albright, was ultimately terminated for violations of Department of Correction's policies and procedures that occurred during the January 6, 2007 incident.

II.

Considering a motion for summary judgment, the Court views all facts and makes all inferences in a manner most favorable to the non-moving party. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 - 588 (1986) (quoting *United States v. Diebold, Inc. V.* 369 U.S. 654, 655 (1962)). While the moving party must demonstrate that no genuine issue of material fact exists, in response, the non-moving party must move beyond the pleadings and present evidence in support of its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

---

[1] On page 4 of Plaintiff's Response to Defendant's Motion for Summary Judgment, Plaintiff states that he also informed "others" besides Williams and Chapman of his mobilization. However, since no specific person was named, the Court will consider Williams and Chapman to be the two supervisors Yoder personally informed.

2

III.

The USERRA prohibits discrimination in employment based on military status. An employer has violated this statute "if the person's membership, application for membership, service, application for service, or obligation for service in the uniformed services is a motivating factor in the employer's action." 38 USC 4311 (c)(1)(2002). In cases arising under this Act, a plaintiff must show a prima facie case of discrimination, or that the plaintiff's "military service was a motivating factor in an adverse employment action." *Hance v. Norfolk Southern Railway Co.*, 571 F.3d 511, 518 (6th Cir. 2009). Once the plaintiff has established a prima facie case of discrimination, the employer may avoid liability by demonstrating that it would have taken the adverse employment action regardless of the plaintiff's military status. *Id.* (quoting *Sheehan v. Dep't of Navy,* 240 F.3d 1009, 1013 (Fed.Cir. 2001)).

There are many ways to infer discriminatory motivation, such as "proximity in time between the employee's military activity and the adverse employment action, inconsistencies between the proffered reason and other actions of the employer, an employer's expressed hostility towards members protected by the statute together with knowledge of the employee's military activity, and disparate treatment of certain employees compared to other employees with similar work records or offenses." *Hance*, 571 F.3d at 518 (quoting *Sheehan v. Dep't of Navy*, 240 F.3d 1009, 1014 (Fed. Cir. 2001)).

A.

An immediate problem requires discussion. To discriminate based on military status or military obligations, the person making the employment decision must know of the military status or obligations. Defendant has presented affidavits of both Director Campbell and Deputy

3

Director Sidebottom stating that neither was aware of Plaintiff's military status when the termination decision was made. Given the short period of time between Yoder's notification of his pending deployment and his termination, it would be difficult to infer Sidebottom and Campbell's knowledge of Yoder's military obligations.

However, Plaintiff has presented the affidavit of Denise Fitzpatrick, who was employed with Human Resources at the Department of Corrections at the time of Yoder's termination. Fitzpatrick remembers learning of Officer Yoder's pending deployment before his termination; she "relayed the information up her chain of command and in the normal operation Deputy Director Sidebottom would have been advised." If Fitzpatrick provides similar testimony at trial, a jury could find knowledge by Sidebottom and Campbell of Yoder's military status and pending deployment. This knowledge, combined with the proximity between Yoder's notification of his deployment and his termination, satisfies the prima facie case.

B.

Defendant pointed to the January 6th incident and the subsequent investigatory findings as legitimate business reasons for the termination. Plaintiff responds that there are "inconsistencies between the proffered reason and other actions of the employer." *Hance*, 571 F.3d at 518 (quoting *Sheehan v. Dep't of Navy*, 240 F.3d 1009, 1014 (Fed. Cir. 2001)). In late March, Yoder was placed in the main control room of the jail, a position that Yoder explains has more responsibility. Nevertheless, Defendant decided to terminate Yoder because it "did not want to take a chance on probationary employees who had exhibited such poor judgment." Ordinarily, such evidence would be enough to avoid a suggestion of pretext. However, Plaintiff presents other evidence which might either prove or permit an inference of discriminatory motive.

4

Plaintiff presents evidence that Director Campbell might prefer to hire or retain non-military employees because the number of military reserve employees in the Department who had been called to duty was causing budget problems.[2] Plaintiff says that these comments were possibly discussed among employees at the Department of Corrections and could demonstrate a bias toward military employees. Furthermore, Plaintiff argues that "discriminatory statements by the executive authority of a defendant in a discrimination suit can be direct evidence of discrimination sufficient to defeat summary judgment." *LaPointe v. United Autoworkers Local 600*, 8 F.3d 376, 380 (6th Cir. 1993). The Court agrees that the newspaper quotes, which Director Campbell has not denied, could suggest an unlawful intent and could cause the jury to disbelieve Defendant's stated reasons.

Defendant responds that these are not discriminatory statements but are merely nonbiased discussion of budgetary issues. Defendant also points out, the statements made by Director Campbell do not rise to the level of hostility of those in *LaPointe*. It argues that the comments in *LaPointe* directly and unambiguously expressed discrimination towards older individuals and were more frequent than Campbell's comments to the newspaper. *LaPointe*, 8 F.3d at 380.

Nevertheless, the Court concludes that if the jury believed both the comments attributed to Campbell and that Campbell knew of Yoder's military status, such conclusions are significant enough to convince a jury that Campbell's actual motivation was to reduce the number of servicemen in his employ.

Being otherwise sufficiently advised,

---

[2]Joseph Gerth, *Louisville Spends Millions on Overtime,* Courier Journal, Feb. 10, 2007, at A1, ECF No. 22-1 and Dan Klepal, *Public Safety Goes $7 Million Over Budget,* Courier Journal, March 28, 2007, at B1, ECF No. 22-2. Defendants argue that these articles are inadmissible hearsay. However, at this time, the Court has no reason to believe that Campbell will deny making these comments when called to testify.

IT IS HEREBY ORDERED that Defendant's motion for summary judgment is DENIED.

The Court will set a trial date in the near future.

cc: Counsel of Record